The case before us is of awful importance; every circumstance in it is worthy of attention and consideration. I am pleased at the solemn silence which hath prevailed during the progress of this trial. The offense of which the prisoner is indicated is that of the *Page 349 
murder of Nathaniel Daves. If he is guilty upon the evidence, weighed by the law of the country, public justice requires he should not be screened by any misplaced compassion; and if upon the evidence he is not guilty of the crime imputed to him, no influence whatsoever should prevail to hinder his acquittal. Whether he be guilty or not depends upon the law and the fact.
Before we proceed to examine the fact, we should clearly comprehend what is meant by the term murder. To fix the attention only to such circumstances as are material to be considered now, it will be sufficient to say it is a killing with malice prepense. The other parts of the definition have been fully given by the Solicitor-General. Malice prepense is a legal term that needs explanation. It does not signify ill-will or malevolence against an individual; it means, as some authors express it, a disposition to do evil; as others, the symptom of a wicked, depraved, and corrupted heart; as others, the sign of a heart regardless of social duty, and fatally bent upon mischief; by others, it is termed a circumstance attending the fact that cuts off the slayer from all manner of excuse. All of them being only different modes of representing the same idea. By this latter explanation is meant that when the killing is without any justifying, excusing, or alleviating circumstance, it is then murder. There are a great variety of such circumstances; for instance, where the killing is committed by an officer in executing the sentence of a proper tribunal, the killing by such authority and for such a reason is a circumstance that justifies the party. So, also, if a man kill another who is attempting to kill or rob him, or the like; here the killing, being with a design to prevent the perpetration of as great an evil attempted to be brought upon an innocent person, is a circumstance that justifies the deed. If the man doing a lawful act in a proper manner undesignedly kills another: here the killing, being done without any design to kill, and without any negligence in the party killing, is a circumstance which excuses him. So if the party slaying hath been fighting with another, and declines the combat, and the other press him so hard that he is obliged to kill him to prevent his own destruction or great bodily harm: this circumstance of killing to avoid his own destruction, though originally culpable in fighting with the deceased (446) at all, will excuse him from the guilt of felony. And in all other cases where the circumstances attending the fact are such as will justify or excuse the party, he is not guilty of murder, because the circumstances are not such as leave him without excuse. Also, although the killing may not be attended with circumstances of justification or excuse, yet it may be attended with such circumstances as will mitigate his offense, and afford him something to say by way of excusing or *Page 350 
exempting himself from the guilt of murder: as where some great and violent provocation hath been given to him by the person killed, and he in the transport and fury of his passion killeth the other, the law in such case attributes the killing to the frailty of human nature, operated upon by excessive anger, excited by the unworthy treatment of the deceased; and both law and reason says that a killing under such circumstances should not be punished with the same severity as a killing without provocation, or without a very great one, and when the mind is cool and reflecting.
The great distinction between murder and manslaughter is this: manslaughter is committed under the operation of furious anger that suspends for a time the proper exercise of reason and reflection, and which hath been stirred up by some great provocation; for there are some provocations that are not indulged with an allowance of exciting the passions to such excess, and thus a distinction is formed between the different degrees of provocation. If it be by words or gestures only, it will not be sufficient to mitigate homicide into manslaughter; but if it be a provocation by some great indignity offered to the party killing, as by spitting in his face or the like, or by falling out and fighting, so that in either case it may reasonably be presumed the blood is heated, and the passions raised to such a degree as to suspend the proper operation of the reasoning powers, the exercise of judgment and reflection, such provocation will be a sufficient one to extenuate the offense into manslaughter. But although a sufficient provocation be given, and the passions greatly excited, yet if a sufficient time intervenes for the passions to subside and cool, and after that the party provoked killeth the other, the law will deem it murder, as having not been an effect of ungovernable passion and from the frailty of human nature, but upon a principle of revenge after reason had assumed its proper station. What is a sufficient time for this purpose hath never as I know of been precisely ascertained. It hath been adjudged that an hour is more than (447) sufficient time. It seems to depend greatly upon the nature of the provocation, and must be left to the jury to decide. If in the case before them they think sufficient time did intervene, they should find the prisoner guilty, though he had been greatly provoked before; if otherwise, they should find him not guilty of murder, but of manslaughter only. Also, although the slayer hath been greatly provoked, and was agitated by resentment and anger in the highest degree, and hath not had a sufficient time for cooling before the fatal stroke given, yet if in fact he appears to be possessed of deliberation and reflection, when or just before the time he gives the mortal blow, it will be murder: as where two men quarrel, and agree to fight, and the one observes to the other, he must first change his shoes, as they would render him less *Page 351 
expert with the sword, and they afterwards go out and fight, and he kills the other, it is murder, because the remark he made shows deliberation and reflection; for always it is to be observed, that the law allows the offense to be extenuated only upon the ground that the slayer has not the free and proper exercise of his rational faculties, owing to the fury of resentment not unreasonably conceived.
There are other distinctions between murder and manslaughter not necessary to be now taken notice of, as they have no relation to any such case as is framed by the evidence now before the Court.
It is most proper to state only such parts of the law concerning homicide as, being compressed into a succinct compass, may serve to exhibit a clear view of the distinction between murder and manslaughter as far as regards this case. The next thing to be done is to apply such parts of the evidence as are material to the rules just laid down.
The first thing that presents itself is, Norris' going in Ramsay's house. He does not appear to have behaved illy there; from the whole of the evidence it does not appear he went there with a design to quarrel; he had retired before Daves and Dudley stripped and went out. They hallooed for him and Young in the street, calling them cowards. Daves charged Norris, when met, with a design to raise a riot; he denied it again and again, till called a damned liar, when he retorted the lie conditionally; Daves tripped up his heels, kicked at him on the ground, struck him after he had risen; and upon Norris' intimating an intention to resort to the law for redress, repeated his blows three or four times, when Norris ran off. Now the question arises, Was this a great provocation? Would such treatment excite the passions of man in general to a degree of excess? I think it would. If Norris had killed Daves on the spot, I think it would have been but manslaughter. Norris (448) returned in three or four minutes, and gave the fatal stab. If he came up and nothing more passed before the stab, as the witnesses Campbell and Dudley say they did not, then it is for the jury to consider whether the three or four minutes intervening between the blows near Mrs. Ramsay's and the stab opposite Thompson's was sufficient time for the passions to cool. If it was, the killing was murder. If it was not, the case falls under the same consideration as if the fatal stroke had been given when Daves first struck him. If the jury believe what was sworn by Mrs. Thompson, and which the other witnesses do not mention, that Daves when he advanced towards Norris after his return struck him two or three blows before the stab, they have a right to consider whether that was not a fresh provocation sufficient to extenuate the homicide into manslaughter. If, however, the jury believe there was not a sufficient time for the passions to subside, and that the blows mentioned by Mrs. *Page 352 
Thompson did not pass, yet the circumstances related by two witnesses of Norris' having twice denied his having a weapon or club, as it tends to evince deliberation and reflection, must be taken into their consideration; and if they believe from this circumstance that he at that time had a reflecting capacity, and meant to conceal the weapon from Daves in order to draw him on, that he might kill him, then he is guilty of murder. It is proper, however, to observe that such a conclusion is in some sort negatived by Mrs. Thompson, who declares Norris told him to stand off, or the worst would be his. The jury will now take the law, the facts, and the circumstances of this case, and by a careful comparison of the one with the other, they will draw a conclusion and say whether the prisoner is guilty of murder or manslaughter. I trust I have stated the law correctly.